Opinion issued September 25, 2009 











In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00387-CV






IN RE EDWARD AND MARGIE WILHITE, Relators






Original Proceeding on Petition for Writ of Mandamus






DISSENTING OPINION


 The En Banc Court holds that a trial judge is not disqualified from sitting in an
asbestos exposure case in which the defendant is represented by the judge's former
law firm even though the firm had, when the judge was a partner there, represented
the same defendant in an asbestos exposure case involving the same facility, the same
time period, and similar allegations, defenses, and issues. 

 The Texas Constitution commands that no judge shall sit in any case in which
a lawyer, with whom the judge previously practiced law, served, during the time of
their association, as a lawyer in the same matter in controversy. See Tex. Const. art.
V, §11; Tex. R. Civ. P. 18b(1)(a); Tesco Am., Inc. v. Strong Indus., Inc., 221 S.W.3d
550, 553 (Tex. 2006); In re O'Connor, 92 S.W.3d 446, 448 (Tex. 2002). The Texas
Supreme Court has clearly explained that the Texas Constitution requires the
vicarious disqualification of judges because an attorney's knowledge about a matter
is "imputed by law to every other attorney in [his] firm." Nat'l Med. Enters., Inc. v.
Godbey, 924 S.W.2d 123, 131 (Tex. 1996). Moreover, it has also clearly explained
that constitutional disqualification is required when the "same matter in controversy"
is involved, not only when the exact same lawsuit is involved, O'Connor, 92 S.W.3d
at 449, i.e., not only when, as suggested by the En Banc Court, the pertinent plaintiffs
are not "strangers" to each other and are "legally joined in their lawsuits," their
injuries arise out of the exact same incident, and they sue the same co-defendants. 

 Here, by a petition for writ of mandamus, relators, Edward and Margie Wilhite,
challenge the multidistrict pretrial court's (1) order denying their motion to disqualify
the trial court judge, the Honorable Edward P. Magre, from sitting in the underlying
lawsuit. (2) The Wilhites contend that Judge Magre is disqualified from presiding over
the underlying lawsuit because his former law firm, Ellet, Camp, Magre & Glasser,
P.C. (the "law firm"), represented the real party in interest, Alcoa, in two similar
asbestos lawsuits while Judge Magre was a partner at the law firm. Because the
underlying lawsuit and one of the asbestos lawsuits in which the law firm provided
counsel involve the same matter in controversy, I would conditionally grant
mandamus relief. Accordingly, I respectfully dissent.

Background Over a decade ago, Judge Magre was a partner at the law firm along with
attorney Emory Camp. While Judge Magre worked at the firm, Camp, on behalf of
the firm, twice represented Alcoa, the defendant in the underlying lawsuit. Judge
Magre was not personally involved in either matter. The law firm first represented
Alcoa in 1996, when the estate of former Alcoa employee, Glenn Whatley, sued a
variety of defendants, including Alcoa, for negligently exposing him to asbestos at
Alcoa's plant in Rockdale, Texas. In that lawsuit, the plaintiffs alleged that Whatley
developed mesothelioma after Alcoa and the other defendants exposed him to
asbestos dust. Alcoa was later dismissed from the lawsuit. The law firm next
represented Alcoa in 1997, when Bernice and Floyd Cavitt sued Alcoa and other
defendants. The Cavitts alleged that Bernice developed mesothelioma after being
exposed to asbestos by her husband, Floyd Cavitt, who had been negligently exposed
to asbestos while working for Alcoa at an unspecified plant. The Cavitts obtained a
$2.11 million judgment against Alcoa. 

 In 2008, the Wilhites brought the underlying lawsuit, alleging that Alcoa and
other defendants negligently exposed Edward to asbestos when he worked at Alcoa's
Rockdale plant. The Wilhites filed the underlying lawsuit in Dallas County Court at
Law Number 2, and it was transferred to the multidistrict pretrial court for pretrial
proceedings. The pretrial court granted Alcoa's motion to transfer venue to Milam
County and set a trial date. The Wilhites then moved to disqualify Judge Magre on
the ground that when he was a partner at the law firm, the firm had represented Alcoa
in the Whatley and Cavitt lawsuits, which involve the same matter in controversy. 

 

 The multidistrict pretrial court, after confirming that Judge Magre would not
remove himself from sitting in the case, denied the Wilhites' motion to disqualify
Judge Magre. At the hearing on the motion, the multidistrict pretrial court, after
overruling Alcoa's hearsay objections concerning the Wilhites' evidence, concluded
that the underlying lawsuit differs factually from the Whatley and Cavitt lawsuits.

Constitutional Disqualification The Wilhites argue that Judge Magre, in accordance with the Texas
Constitution and the Texas Rules of Civil Procedure, is vicariously disqualified from
sitting in the case because the Whatley and Cavitt lawsuits, in which Camp served as
counsel for Alcoa, share the same issues with and concern the same matter in
controversy as the underlying lawsuit. See Tex. Const. art. V, § 11; Tex. R. Civ. P.
18b(1)(a). Alcoa argues that Judge Magre should continue to preside over the case
because the three suits concern different matters in controversy.

 Mandamus relief is proper when a trial court erroneously denies a motion to
disqualify. See In re O'Connor, 92 S.W.3d at 450. In Texas, a judge may be
removed from a case because he is constitutionally disqualified, subject to a statutory
strike, or recused. See In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998). 
The grounds and procedures for each type of removal are fundamentally different. 
Id. Here, the issue is one concerning only the disqualification of Judge Magre.

 Unlike statutory recusal, disqualification cannot be waived, and may be raised
at any time. McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex. App.--Houston [1st
Dist.] 1995, orig. proceeding). "[I]f an error is ever made as to disqualification, it
should be in favor of the disqualification rather than against it." Cotulla State Bank
v. Herron, 202 S.W. 797, 798 (Tex. Civ. App.--San Antonio 1918, no writ). 

 The Texas Constitution, which establishes the grounds for judicial
disqualification, provides, in relevant part, that "[n]o judge shall sit in any case . . .
when the judge shall have been counsel in the case." Tex. Const. art. V, § 11. 
Judicial disqualification is also addressed in the Texas Rules of Civil Procedure,
which provide that 

Judges shall disqualify themselves in all proceedings in which: 


 (a) they have served as a lawyer in the matter in controversy,
or a lawyer with whom they previously practiced law served
during such association as a lawyer concerning the matter . .
. .

 

Tex. R. Civ. P. 18b(1)(a). Rule 18b(1)(a) "was intended to expound rather than
expand the Constitution." Tesco Am., 221 S.W.3d at 553. Consequently, "the case,"
as referenced in the Texas Constitution, is synonymous with the "same matter in
controversy," referenced in Rule 18b(1)(a). See id.; Slaven v. Wheeler, 58 Tex. 23,
25 (1882). 

 Vicarious disqualification is explicitly required under Rule 18b(1)(a). Tesco
Am., 221 S.W.3d at 553-54. Although the Texas Constitution does not expressly
mention vicarious disqualification, it, too, requires vicarious disqualification. Id. As
explained by the Texas Supreme Court, an attorney's knowledge about a matter is
"imputed by law to every other attorney in the firm." Nat'l Med. Enters., 924 S.W.2d
at 131. When considering disqualification, it is irrelevant if the judge, while an
attorney, had no part in the civil litigation pending before him if he had been a
member of the law firm that gave counsel as to the pending litigation. (3) See State v.
Burks, 82 Tex. 584, 585, 18 S.W. 662, 662 (1891).

 Thus, under Texas law, a judge is constitutionally disqualified when (1) the
judge or the judge's law firm was the attorney for a party in the case, and (2) the
matter before the judge is the same matter that was before the judge or judge's law
firm. See In re O'Connor, 92 S.W.3d at 448 (citing Lade v. Keller, 615 S.W.2d 916,
920 (Tex. Civ. App.--Tyler 1981, no writ)) ("[I]t is necessary that the judge acted as
counsel for some of the parties in [the] suit before him in some proceeding in which
the issues were the same as in the case before him."). The same "matter in
controversy" must be involved, regardless of whether the same lawsuit is involved. 
In re O'Connor, 92 S.W.3d at 448-49 ("By its own terms, rule 18b(1)(a) is not
limited to disqualifying a trial judge only when the 'same lawsuit' is involved. 
Rather, in plain language, rule 18b(1)(a) requires disqualification when the same
'matter in controversy' is involved.") (citing Tex. R. Civ. P. 18b(1)(a)). However,
the "fact that the two suits might have some facts in common" alone does not mean
that they concern the same "matter in controversy." Dixie Carriers, Inc. v. Channel
Fueling Serv., Inc., 669 F. Supp. 150, 152 (E.D. Tex. 1987) (referring to similar
federal rule). 

 Here, no one disputes that Judge Magre was a partner at the law firm when the
law firm represented Alcoa in the Whatley and Cavitt asbestos lawsuits. Accordingly,
Judge Magre is vicariously disqualified from sitting in the underlying lawsuit if the
firm previously represented Alcoa concerning the same "matter in controversy." See
In re O'Connor, 92 S.W.3d at 448. Thus, the critical question is whether the matter
now before Judge Magre involves the same matter in controversy as did the Whatley
or Cavitt lawsuits. See id. at 449 ("Thus, the issue here is whether the divorce and
modification proceedings involved the 'same matter in controversy.'"). 

 The Wilhites argue that the underlying lawsuit concerns the same matter in
controversy as did the Whatley and Cavitt lawsuits because all of the lawsuits involve
claims of asbestos exposure at Alcoa plants and, specifically, Edward Wilhite and
Glen Whatley worked at the Alcoa Rockdale plant during the same approximate time
period. The Wilhites assert that "the pleadings in all three lawsuits include
negligence claims and intentional tort claims which raise the following issues: (1)
whether asbestos exposure poses a heath risk; and, (2) whether and when Alcoa knew
that asbestos exposure poses a heath risk." Alcoa filed a general denial in all three
suits, contesting the allegations that asbestos exposure posed health risks and Alcoa
had knowledge of such health risks. Also, Alcoa pleaded the same affirmative
defense in all three lawsuits--that the plaintiffs' claims are barred by the Workers'
Compensation Act. 

 The Whatley and Wilhite lawsuits share many similarities. First, both cases
involve the issue of whether Alcoa knew of the risk of harm posed by asbestos
exposure. The Whatley plaintiffs alleged,

 Specific intentional acts and acts constituting negligence
committed by the Alcoa defendants that proximately caused Plaintiff's
injuries and damages resulting from the Decedent's death include: . . .
Failure to provide adequate safety measures and protection against
deadly and life-threatening asbestos dust, all despite Defendant's
knowledge of the extreme risk of harm inherent to asbestos exposure.

The Wilhites allege,

Alcoa, Inc., knew of the serious health hazards, including asbestosis,
lung cancer, and death resulting therefrom, associated with asbestos
exposure, at least as early as 1955.

 

 Second, both cases involve the issues of whether Alcoa failed to warn its
employees about the hazards of asbestos exposure and failed to ensure a safe work
environment. The Whatley plaintiffs alleged,

 The Defendants failed to properly remove and/or abate said
asbestos at this facility during the time Decedent was employed there 

. . . . [Additionally, Alcoa failed] to provide safe equipment for Decedent
to use . . . [failed] to adequately warn Decedent of the inherent dangers
of asbestos contamination . . . [and failed] to provide Decedent a safe
place to work . . . . 


The Wilhites allege,


 Alcoa, Inc. took absolutely no action to warn employees such as
Edward Wilhite of these serious health hazards and in fact, made a
deliberate and calculated choice to keep this known information from its
employees. Furthermore, Alcoa, Inc. intentionally failed to implement
and follow the few policies and procedures it finally instituted in the
1970s to protect employees such as Edward Wilhite from health hazards
related to asbestos exposure, even though Alcoa, Inc. was required to do
so by state and federal law, and even though at the corporate level,
Alcoa, Inc. knew that its local plants, including the Rockdale plant, were
not following asbestos regulations and internal policies related to
asbestos exposure. Alcoa, Inc. intentionally chose to maintain unsafe
working conditions at the Rockdale plant . . . . 


 Third, both cases involve the issue of whether the plaintiffs' mesothelioma was
proximately caused by exposure to asbestos at the Rockdale plant. The Whatleys
alleged,

 In particular, Plaintiff would show that the Alcoa Defendants
demonstrated such an entire want of care as to establish that their acts
and omissions were the result of actual conscious indifference to the
rights, safety, and welfare of the Decedent, and that such intentional acts
and omissions proximately caused the Decedent's death. 


The Wilhites allege,


 Alcoa, Inc.'s intentional conduct resulted in Edward Wilhite's
asbestos-related injuries, including mesothelioma, and these injuries are
intentional in nature. 


 Fourth, both cases involve the issue of whether Alcoa knew or should have
known that its actions would cause injury or death. The Whatleys alleged:

 The Defendants knew or should have known that its individual
actions would combine to cause the injuries and/or deaths of Plaintiff's
Decedent.


The Wilhites allege,


 Alcoa, Inc., knew with a substantial certainty that employees such
as Edward Wilhite would be exposed to asbestos through their job
duties; and knew with a substantial certainty that employees such as
Edward Wilhite would contract an asbestos related illness, including
mesothelioma, by reason of their job and job duties at the Rockdale
location. In fact, based on the extent of Alcoa, Inc.'s knowledge of the
health hazards of asbestos exposure and the ubiquitous use of asbestos
during Edward Wilhite's years of employment, it is impossible that
Alcoa, Inc. was not substantially certain of these facts. 


 Finally, the plaintiffs in both suits alleged that Alcoa acted with intent, malice,
or both. The Whatleys alleged,

 The actions and omissions of all Defendants as specifically
alleged hereinabove, whether taken separately or together, were of such
a character as to constitute a pattern or practice of intentional wrongful
conduct and/or malice resulting in damages, injuries and/or death to the
Plaintiff's Decedent. 


The Whilhites allege,


Because Alcoa, Inc., was substantially certain . . . that an employee such
as Edward Wilhite would contract an asbestos-related illness, including
mesothelioma, Alcoa, Inc.'s actions rise to the level of an intentional
tort. 

 

 The reasoning of In re O'Connor is applicable here. O'Connor, the ex-wife of
O'Brian, was first represented by Kyle Hawthorne when the trial court ordered
temporary orders regarding the custody of O'Connor's and O'Brian's child. In re
O'Connor, 92 S.W.3d at 447. In its temporary orders, the trial court appointed
O'Brian as sole managing conservator, with primary custody and the exclusive right
to determine the child's residence. Id. O'Connor's attorney-client relationship with
Hawthorne then ended. Id. O'Connor later petitioned to increase her time periods of
possession of the child and to have the right to determine the child's residence. Id. 
Judge Michel, a former law partner of Hawthorne, presided over the modification
proceeding. Id. O'Connor moved to disqualify Judge Michel under Rule 18b(1)(a). 
Id. at 448. O'Connor contended that, because both of the proceedings involved
possession of the child, they concerned the same "matter in controversy." Id. O'Brian
asserted that Rule 18(1)(a) was inapplicable because it applies only when the issues
in the two lawsuits are identical. Id. The supreme court pointed out that, when
assessing disqualification, whether two proceedings share the same matter in
controversy is determinative, not whether each proceeding involved the same lawsuit. 
Id. at 449. Because the temporary orders and modification proceeding both dealt with
the same matter in controversy--"custody, visitation, and the right to determine the
child's residence"--Judge Michel was disqualified. Id. at 449-50. Although the
lawsuits were different, the judge was disqualified because the same matter in
controversy was involved. Id. 

 Here, likewise, the underlying lawsuit and the Whatley lawsuit are not identical. 
However, they concern the same matter in controversy, which involves the same
defendant in similar asbestos litigation stemming from asbestos exposure at the same
location over a significant, overlapping period of time. Id. at 449. The underlying
lawsuit and the Whatley lawsuit each involve the plaintiffs' similar claims that they
were exposed to asbestos by Alcoa at the same plant during the same approximate time
period, that asbestos poses a health risk, and that Alcoa was aware of the health risk. 
Specifically, Whatley worked at Alcoa's Rockdale plant from 1954 to 1990, and
Wilhite worked there from 1955 to 1982. 

 Accordingly, I would hold that the underlying lawsuit and the Whatley suit
involve the same matter in controversy. Both lawsuits share (1) similar essential facts
leading up to the alleged asbestos exposure by the same company at the same location
during the same period of time, (2) similar causes of action, and (3) similar responses
and defenses by Alcoa. Id. Because the Whatley suit involved the same matter in
controversy currently at issue in the underlying suit, I would further hold that Judge
Magre is disqualified from sitting in the underlying suit and that mandamus relief
should be conditionally granted. Id. 

 The Texas Supreme Court has emphasized that 

 [W]e must construe any ambiguity in the constitutional [disqualification]
provision here to effectuate its purpose. Repeatedly, the people of Texas
have insisted on constitutional protection against "counsel in the case"
becoming a judge in the case[.]


Tesco Am., 221 S.W.3d at 554. Here, the En Banc Court holding eviscerates the
constitutional protection. To hold that two lawsuits do not involve the same "matter
in controversy" merely because they concern different plaintiffs who are "strangers"
to each other and not "legally joined in their lawsuits," their injuries do not arise out
of the same incident, and they did not sue the same co-defendants is inconsistent with
the Texas Supreme Court's emphasis on the meaning of "matter in controversy" and
its broad interpretation as something encompassing more than a "case" for purposes
of disqualification. See In re O'Connor, 92 S.W.3d at 449. 



 



 As recognized by the supreme court, the vanquishing power of vicarious
disqualification is of serious concern. Tesco Am., 221 S.W.3d at 554. Here, however,
as in Tesco American, "no supine surprise was sprung" on the defendant. See id. 
None know better of the previous representation of Alcoa by the trial judge's former
law firm than Alcoa. See id. 




 Terry Jennings

 Justice


Panel consisted of Justices Jennings, Alcala, and Higley.


En banc consideration was requested. Tex. R. App. P. 41.2(c).


A majority of the justices of the Court voted in favor of considering the case en banc.


The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes,
Alcala, Hanks, Higley, Bland, Sharp, and Massengale.


Justice Alcala, writing for the majority of the en banc court, joined by Chief Justice
Radack and Justices Keyes, Hanks, Bland, and Massengale.


Justice Jennings, dissenting, joined by Justices Higley and Sharp.





 
1. See Tex. R. Jud. Admin. 13; Tex. Gov't. Code Ann. §§ 74.161-.164 (Vernon Supp.
2008).
2. The underlying lawsuit is titled Edward Wilhite Individually and Margie Wilhite,
Individually, v. Able Supply Co., Alcoa, Inc., Ametek, Inc., Aqua-Chem, Inc., A.W.
Chesterton Co., Certainteed Co., Coltec Industries, Inc., Garlock Inc., Garlock
Sealing Technologies, LLC, Guard-Line, Inc., LGS Technologies, LP, Rapid
American Co., Sepco Co., and Uniroyal Holding, Inc., No. 2008-15687, in the 11th
Judicial District Court of Harris County, Texas, the Hon. Mark Davidson, presiding. 
3. Similarly, in federal courts, a judge must disqualify himself "where in private practice
he served as a lawyer in the matter in controversy, or a lawyer with whom he
previously practiced law served during such association as a lawyer concerning the
matter." 28 U.S.C. § 455(b)(2). The "deliberate choice by congress demonstrates an
intent that the words 'matter in controversy' mean something other than what we
commonly refer to as a 'case' . . . so we do not rely on this technical distinction." 
Little Rock Sch. Dist. v. Armstrong, 359 F.3d 957, 960 (8th Cir. 2004). The federal
standard that a judge must "disqualify himself in any proceeding in which his
impartiality might reasonably be questioned--is established when a reasonable
person, knowing the relevant facts, would expect that a judge knew of circumstances
creating an appearance of partiality, notwithstanding a finding that the judge was not
actually conscious of those circumstances." Liljeberg v. Health Serv. Acquisition
Corp., 486 U.S. 847, 848, 108 S. Ct. 2194, 2196 (1988). However, "a judge's prior
representation of a witness or a party in an unrelated matter does not automatically
require disqualification." David v. City of Denver, 101 F.3d 1344, 1351 (10th Cir.
1996) (citing United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)). Where a
case "involves remote, contingent, indirect or speculative interests, disqualification
is not required." Lovaglia, 954 F.2d at 815 (referring to federal rule).