Opinion issued September 25, 2009




 










In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00387-CV






IN RE EDWARD AND MARGIE WILHITE, Relators






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N


 In this petition for writ of mandamus, relators, Edward and Margie Wilhite,
contend that the Honorable Edward P. Magre, judge of the 20th Judicial District
Court in Milam County, Texas, is disqualified from presiding over the underlying
asbestos lawsuit filed against defendant Alcoa, Inc., the real party in interest. The
Wilhites assert that the multidistrict pretrial court (1) erroneously denied their motion
to disqualify Judge Magre because his previous law firm represented Alcoa over a
decade ago in two similar asbestos lawsuits. (2) Although there are similarities between
the lawsuit filed by the Wilhites and the two lawsuits where the law firm represented
Alcoa a decade ago, the specifics fail to show that the litigations concern the same
matter in controversy. We therefore deny the petition for writ of mandamus.

 Background


 Although he did not personally represent Alcoa, Judge Magre was a partner at
Ellet, Camp, Magre & Glasser, P.C. (the "law firm") when the law firm twice
represented Alcoa in suits filed against it for injuries caused by exposure to asbestos. 
The law firm represented Alcoa in 1996 in a lawsuit for damages brought by the
estate of Glen Whatley, who died from mesothelioma. Whatley asserted that he was
exposed to asbestos while working as a pipefitter and insulator at the Alcoa Rockdale
plant from 1954 to 1990. According to the pleadings in the Whatley lawsuit, Alcoa
failed to provide adequate safety measures to protect against asbestos dust, Alcoa
knew of the extreme risk of harm inherent to asbestos exposure, Alcoa failed to warn
its employees about the hazards of asbestos exposure, Alcoa failed to ensure a safe
work environment, and Alcoa intentionally caused the mesothelioma. Although he
pleaded that Alcoa caused his injuries, Whatley dismissed Alcoa from the lawsuit for
reasons not shown in the documents before us. The documents do show, however,
that Whatley testified in his deposition that he believed he was also exposed to
asbestos when he worked for two other companies before Alcoa. 

 The law firm again represented Alcoa in 1997 in a lawsuit resulting in a two
million dollar judgment against Alcoa for damages for Bernice Cavitt's asbestos-related lung cancer. Bernice was exposed to asbestos by laundering the clothes worn
by her husband, Floyd, who worked at the Alcoa Rockdale plant from 1953 to the
early 1980s as a "potliner," carbon setter, and crane operator. The defense at the
Cavitt's trial was that Bernice's lung cancer was caused by exposure to Floyd's
cigarette smoking for over five years; that there was no asbestosis diagnosis; and that
there were alternative sources of exposure to asbestos.

 Like the Whatley and Cavitt lawsuits, the present lawsuit against Alcoa also
concerns allegations of exposure to asbestos at Alcoa's Rockdale plant during the
same period of time. The Wilhite pleadings assert Edward worked at that plant from
1955 to 1982 in the "potrooms" performing "many different tasks."

 After Edward was diagnosed with malignant pleural mesothelioma in 2007,
the Wilhites filed suit the following year against Alcoa and numerous other
defendants. Like the Whatley lawsuit, the Wilhite pleadings assert Edward was
injured by Alcoa's failure to provide adequate safety measures to protect against
asbestos dust, that Alcoa knew of the extreme risk of harm inherent to asbestos
exposure, that Alcoa failed to warn its employees about the hazards of asbestos
exposure, that Alcoa failed to ensure a safe work environment, and that Alcoa's
intentional acts caused the mesothelioma. Applicable Law

 Mandamus relief is proper when a trial court erroneously denies a motion to
disqualify. See In re O'Connor, 92 S.W.3d 446, 450 (Tex. 2002). An erroneous
ruling on a recusal, however, has historically not been addressed by mandamus relief,
but rather by direct appeal after the rendition of a final, appealable judgment. In re
Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998). 

 In Texas, a judge may be removed from a case because he is constitutionally
disqualified, subject to a statutory strike, or recused. See id. The grounds and
procedures for each type of removal are fundamentally different. Id. The pertinent
standard for recusal is that a "judge shall recuse himself in any proceeding in which:
(a) his impartiality might reasonably be questioned." See Tex. R. Civ. P. 18b(2). 
Recusal must be preserved for appeal or it is waived. Buckholts Indep. School Dist.
v. Glaser, 632 S.W.2d 146, 148 (Tex. 1982); McElwee v. McElwee, 911 S.W.2d 182,
185-86 (Tex. App.--Houston [1st Dist.] 1995, writ denied). In contrast to recusal,
"any orders or judgments rendered by a judge who is constitutionally disqualified are
void and without effect." In re Union Pac. Res. Co., 969 S.W.2d at 428. 

 In establishing the grounds for judicial disqualification, the Texas Constitution
states, "No judge shall sit in any case . . . when the judge shall have been counsel in
the case." Tex. Const. art. V, § 11. Judicial disqualification is also addressed in the
Texas Rules of Civil Procedure, which provide that, 

Judges shall disqualify themselves in all proceedings in which: (a) they
have served as a lawyer in the matter in controversy, or a lawyer with
whom they previously practiced law served during such association as
a lawyer concerning the matter . . . .

 

Tex. R. Civ. P. 18b(1)(a). Rule 18b(1)(a)'s reference to the "same matter in
controversy" is synonymous with the Texas Constitution's reference to "the case."
Tesco Am., Inc. v. Strong Indus., Inc., 221 S.W.3d 550, 553 (Tex. 2006) (rule
18b(1)(a) "was intended to expound rather than expand the Constitution"); Slaven v.
Wheeler, 58 Tex. 23, 25 (1882). 

 The same "matter in controversy" must be involved, regardless of whether the
same lawsuit is involved. In re O'Connor, 92 S.W.3d at 449. As the Supreme Court
of Texas states,

 By its own terms, rule 18b(1)(a) is not limited to disqualifying a trial
judge only when the "same lawsuit" is involved. Rather, in plain
language, rule 18b(1)(a) requires disqualification when the same "matter
in controversy" is involved.

Id. (citing Tex. R. Civ. P. 18b(1)(a)). The assessment of whether a matter in
controversy is similar or the same must be performed with great care, as noted by the
Supreme Court of Texas: 

Where the constitution has only prescribed that the judge's professional
connection with the case, in the single instance where he has been "of
counsel in the cause," shall disqualify him from presiding upon its trial,
we cannot undertake to say that his professional connection with a
similar cause or one involving the same questions shall have that effect. 
If we depart from the plain language of the constitution, we shall be left
without a rule for our guidance, and shall countenance a laxity of
construction that may prove both dangerous and inconvenient. 


Taylor v. Williams, 26 Tex. 583, 586-87 (1863). 

 In summary, a judge is disqualified when two prongs are met: first, the judge
or the judge's law firm was the attorney for a party in the case, and second, the matter
before the judge is the same matter that was before the judge or judge's law firm. See
In re O'Connor, 92 S.W.3d at 448. A judge will not be disqualified if only prong one
applies. City of Austin v. Cahill, 89 S.W. 552, 552 (Tex. 1905) (judge who has
previously represented one party currently before him on different matter is not
disqualified.). Nor will a judge be disqualified if only prong two applies. See
Glasscock v. Hughes, 55 Tex. 461, 468-69 (1881) (fact that judge has "been
connected as counsel at one period with the matters, or a portion of them" does not
disqualify him); Matlock v. Sanders, 273 S.W.2d 956, 957-58 (Tex. Civ.
App.--Beaumont 1954, no writ) (judge not disqualified even if, as attorney, he
previously gave his opinion in regard to validity of title to land in controversy before
him, when controversy concerns different parties than any of those previously
represented by judge); Butts v. Davis, 149 S.W. 741, 742 (Tex. Civ. App.--Amarillo
1912, no writ) (judge who "long prior to the institution of the suit" had rendered legal
advice on similar matter to lawsuit he currently presided over should not be
disqualified because it "in no way involved this action."). Therefore, both prongs
must be present for a judge to be disqualified. 

 If the record shows a judge or his prior law firm represented a party in the same
matter in controversy, the judge is disqualified, even if he did not personally
participate in the representation. See State ex rel. Routh v. Burks, 82 Tex. 584, 585,
18 S.W. 662, 662 (1891). An attorney's knowledge about a matter is "imputed by law
to every other attorney in the law firm." Nat'l Med. Enters., Inc. v. Godbey, 924
S.W.2d 123, 131 (Tex. 1996). Although he did not personally participate in the law
firm's representation of Alcoa, Judge Magre is vicariously disqualified from sitting
in the Wilhite lawsuit if the law firm represented Alcoa in the same matter in
controversy presented in this case. See In re O'Connor, 92 S.W.3d at 448. Our
decision in this case, thus, turns on whether this litigation is the same matter in
controversy as the Cavitt and Whatley lawsuits. Analysis

 The Wilhites contend their present lawsuit involves the same matter in
controversy as the Whatley and Cavitt lawsuits because they all involve claims of
asbestos exposure at the Alcoa Rockdale plant during the same period of time and the
lawsuits share some of the same evidence. The Wilhites intend to use the deposition
of Thomas Bonney, Alcoa's former senior industrial hygienist, that was originally
taken in the Whatley case in 1998, as well as several other depositions taken in that
case. Bonney testified that asbestos use at the Rockdale plant was "ubiquitous" and
that Alcoa did not tell its employees about the dangers of asbestos exposure. The
Wilhites also plan to use the deposition of Jack Clark, a former brick mason at the
Alcoa Rockdale plant from 1952 to 1978, that was taken in the Cavitt lawsuit. 
Furthermore, the Wilhites contend their present lawsuit involves similar liability
theories: that, in each case, the plaintiffs acquired an asbestos-related disease as a
result of exposure to asbestos; and similar defenses: whether asbestos exposure poses
a heath risk, when Alcoa knew that asbestos exposure posed a heath risk, and whether
third parties or the plaintiff himself caused his injuries. 

 Although the Wilhites accurately show that their lawsuit shares with the prior
lawsuits some of the evidence, liability theories, and defenses, these similarities are
insufficient to show that these three law suits are the same matter in controversy. 
First, the plaintiffs in these three cases are complete strangers, not legally joined in
their lawsuits in any way. Each of these plaintiffs is suing for his or her own personal
injury, unrelated to the injuries sought by the other plaintiffs. 

 Second, nothing in the documents before us shows that the injuries arose from
the same incident or the same exposure to asbestos. The record shows, at most, that
the plaintiffs are suing the same defendant for injuries caused by asbestos exposure
at the same general location during the same period of time, but the documents do not
show that these injuries arise from the same incident or the same exposure. The
Cavitts' lawsuit, which concerns Bernice's exposure from washing her husband's
clothes following his shifts at the Rockdale plant, plainly does not involve the same
incident or same exposure as the present lawsuit that alleges direct exposure to
asbestos while Wilhite worked in the potrooms. 

 The Whatley and Wilhite cases are dissimilar in that the pleadings in the
Whatley case assert the exposure occurred during work as a pipefitter and insulator,
and the pleadings in the Wilhite case assert the exposure occurred during work in the
potrooms. The documents do not show whether the employees in the Wilhite and
Whatley lawsuits worked at the same or a similar part of the plant, did the same or
similar type of job, or were exposed to the same or similar substance. 

 Third, an examination of the identities of the other defendants sued in addition
to Alcoa in each of the three lawsuits suggests the liability theories and defenses
would be different in each of the litigations. Of the ten defendants sued by the
Whatleys and 14 defendants sued by the Wilhites, the only two defendants they share
in common are Aluminum Company of America (Alcoa's predecessor company) and
Alcoa Power Marketing, Inc. Of the 35 defendants sued by the Cavitts, only six
defendants are in common with the Wilhites: Aluminum Company of America; Alcoa
Power Marketing, Inc.; Garlock Inc.; Guard-Line Inc.; Rapid-American Corporation
Corp.; and Uniroyal Holding, Inc. This lack of commonality in the named defendants
suggests these are not the same cases because the specific liability theories and
defenses will be different in light of the differences in the parties involved in each of
the lawsuits. Moreover, because the record does not show why Whatley dismissed
his lawsuit, the dismissal raises the question whether Whatley could prove his
liability theory that Alcoa caused his injury, further showing that the Whatley lawsuit
is different from the present lawsuit that asserts Alcoa caused the injuries claimed in
the Wilhite suit.

 Fourth, these same pleadings and defenses can likely be found in hundreds, if
not thousands, of lawsuits in Texas against Alcoa and other companies. The issue is
not whether the cases have the same or similar pleadings, but rather whether they are
the same matters.

 Fifth, the present situation is completely unlike the situation that required
disqualification in O'Connor. See In re O'Connor, 92 S.W.3d at 447-48. O'Connor
challenged the judge because the judge's law firm had represented her against her ex-husband when temporary orders concerning custody of her child were made. Id. The
Supreme Court of Texas held that the judge presiding over the modification
proceeding was disqualified because the modification proceeding concerned the same
matter in controversy--namely the custody, visitation, and right to determine the
child's residence. Id. at 449. In O'Connor, the lawsuits were continuing disputes
between the same plaintiff and same defendant over the exact same subject. Id. at
447-48. Here, the situation is like O'Connor in that one of the parties then is the
same as one of the parties now. But this situation is unlike O'Connor because


 the plaintiffs are each suing for separate injuries unrelated to each
other;


 


 the record does not show that the plaintiffs worked at the same
part of the plant, did the same (or even similar) type of job for the
defendant, or were injured by the same (or even similar) type of
exposure to asbestos; 

 in addition to suing Alcoa, the plaintiffs each sued different
defendants, which means each of the lawsuits concerns different
liability theories and defenses, and

 this is not a continuing dispute between the same plaintiff and
same defendant over a series of lawsuits concerning the exact
same subject, such as custody of the same child.


See id. Though there are general similarities between the Cavitt, Wilhite, and
Whatley matters, the specifics fail to show that the litigations concern the same matter
in controversy. 

 The dissenting opinion relies on the federal rule for disqualification, but that
rule is different from the Texas standard for disqualification because, unlike Texas,
the federal rule includes disqualification for the appearance of impropriety. As the
Supreme Court has stated, "Title 28 U.S.C. 455 provides in relevant part: '(a) Any
justice, judge, or magistrate of the United States shall disqualify himself in any
proceeding in which his impartiality might reasonably be questioned.'" Liljeberg v.
Health Servs. Acquisition Corp., 486 U.S. 847, 858, 108 S. Ct. 2194, 2202 (1987). 
This part of the federal rule for disqualification matches the Texas rule for recusal
that states that a "judge shall recuse himself in any proceeding in which: (a) his
impartiality might reasonably be questioned." See Tex. R. Civ. P. 18b(2). Because
federal cases discussing recusal and disqualification often use the terms
interchangeably, those cases are of limited guidance in interpreting Texas's rule for
disqualification that does not include the appearance of impropriety as a basis for
disqualification. See, e.g., In re Chevron U.S.A., Inc., 121 F.3d 163, 165 (5th Cir.
1997); Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796, 802 (5th Cir.
1986); William W. Kilgarlin & Jennifer Bruch, Disqualification and Recusal of
Judges, 17 St. Mary's L.J. 599, 601, 652 (1986). 

 If we were to determine Judge Magre was disqualified under the facts
presented, that decision would place every future judgment in peril because none of
those judgments will be final until a party, post-judgment, conducts a full
investigation for similarities between the present lawsuit and any lawsuits handled by
the judge's prior law firm. A party could litigate all the facts at trial and say nothing
about any concerns he may have about the judge's law firm's prior representation of
one of the parties in the lawsuit. After receiving an unfavorable judgment, the losing
party could then compare all the facts of his present lawsuit to all the cases of all the
prior lawsuits handled by the judge and all the law firms where the judge previously
worked to see what similarities factually exist. If, within the decades of the time
when the judge was an attorney, the judge's law firm represented a defendant in a
case with the same general subject matter for the same general complaint, all the
actions taken by the judge would be void. For example, assuming a future plaintiff
won a substantial verdict, the unhappy defendant could conduct discovery into the
judge's prior law firm's clients over decades of time to find similarly situated
plaintiffs who sued the same defendants and make all the judge's actions void. An
unhappy future plaintiff faced with a take-nothing judgment could act similarly to
avoid the judgment. The concept of a final judgment would become a thing of the
past. Judges should not remove themselves from cases "where disqualification would
put power in the hands of litigants to frustrate our judicial system." Gaines v. Gaines,
677 S.W.2d 727, 731 (Tex. App.--Corpus Christi 1984, no writ). 

 Departure from "the plain language of the constitution" would prove to be
"dangerous" and leave courts "without a rule" for guidance. See Taylor, 26 Tex. at
586-87. We hold the general similarities between the Cavitt, Wilhite, and Whatley
matters are insufficient to show that the litigations concern the same matter in
controversy. We note that the Wilhites have not moved to recuse Judge Magre, and
thus we express no opinion on the matter of recusal. 



 


Conclusion

 We deny the petition for mandamus.

 

 Elsa Alcala

 Justice

Panel consisted of Justices Jennings, Alcala, and Higley.

En banc consideration was requested. Tex. R. App. P. 41.2(c).

A majority of the justices of the Court voted in favor of considering the case en banc.

The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes,
Alcala, Hanks, Higley, Bland, Sharp, and Massengale.


Justice Alcala, writing for the majority of the en banc court, joined by Chief Justice
Radack and Justices Keyes, Hanks, Bland, and Massengale.


Justice Jennings, dissenting, joined by Justices Higley and Sharp. 




 
1. See Tex. R. Jud. Admin. 13; Tex. Gov't. Code Ann. §§ 74.161-.164 (Vernon
Supp. 2008).
2. The underlying lawsuit is titled Edward Wilhite Individually and Margie Wilhite,
Individually, v. Able Supply Co., Alcoa, Inc., Ametek, Inc., Aqua-Chem, Inc., A.W.
Chesterton Co., Certainteed Co., Coltec Industries, Inc., Garlock Inc., Garlock
Sealing Technologies, LLC, Guard-Line, Inc., LGS Technologies, LP, Rapid
American Co., Sepco Co., and Uniroyal Holding, Inc., No. 2008-15687, in the 11th
Judicial District Court of Harris County, Texas, the Hon. Mark Davidson, presiding. 
The Wilhites filed the underlying lawsuit in Dallas County Court at Law
Number 2, and it was transferred to the multidistrict pretrial court for pretrial
proceedings. The pretrial court granted Alcoa's motion to transfer venue to
Milam County and set a trial date. The Wilhites then moved to disqualify
Judge Magre, who declined to remove himself from presiding over the case.